591 So.2d 1015 (1991)
Allen D. NELSON, Appellant,
v.
McABEE CONSTRUCTION, INC. and Continental Loss, Appellees.
No. 91-597.
District Court of Appeal of Florida, First District.
December 23, 1991.
Russell R. Stewart, Panama City, for appellant.
Patrick E. Weaver of McConnaughhay, Roland, Maida, Cherr & McCranie, P.A., Tallahassee, for appellees.
JOANOS, Chief Judge.
The claimant, Allen D. Nelson, appeals a workers' compensation order in which the judge of compensation claims ruled that claimant was not entitled to receive Florida workers' compensation benefits for an industrial injury which occurred at a job site in Cottonton, Alabama. The injury was accepted as compensable, and the sole question presented to the judge of compensation claims was whether the employment contract was completed in Florida or in Alabama, for purposes of jurisdiction. The judge concluded that Florida did not have jurisdiction over the claim. We affirm, but on reasoning different than that set forth in the subject order.
Claimant, a life-long Florida resident, is a certified boilermaker/welder. He obtains employment through the Boilermaker's Union, Local No. 199, out of the union office in Panama City, Florida. Local No. 199 *1016 has contracts with various companies to provide boilermakers to firms located in parts of Alabama, Georgia, and Florida. Pursuant to Article 5.2 of the Articles of Agreement between the union and the contracting firms, any firm which is a party to the agreement must hire union members to fill its needs for "competent and qualified field construction boilermakers." The agreement further provides that an employer request for qualified boilermakers shall include notice to the union of the location, starting time, approximate duration of the job, the type of work to be performed, and the number of workmen required. The union maintains a rotating list of qualified boilermakers. In this manner, when an individual whose name appears at the top of the list is employed by one of the contracting firms, his name is then placed at the bottom of the list.
The employer, McAbee Construction, Inc., contacted Local No. 199 in Panama City to advise union officials of the company's need for certified welders to work in Cottonton, Alabama. Claimant testified that he received a telephone call from the union office notifying him of the employment opportunity. Upon being advised that claimant would accept the position with McAbee, the union office provided claimant with a referral which he was to present to the employer at the job site. The referral advised where and when to report to the job, the specific employer involved, and the hourly rate of pay. This referral document also served as claimant's pass through the guard gate at the mill site in Alabama. Claimant was paid travel expenses from the union office in Panama City to the job site in Alabama. Once through the gate at the McAbee Construction site in Alabama, claimant went to the McAbee trailer, where he filled out federal and state tax forms, and received a badge which served as a pass to the tool room and to the job. Claimant was told that he need not complete an employment application, and he was not interviewed at the job site by anyone connected with McAbee Construction.
Claimant's testimony demonstrated his recognition that under the Articles of Agreement, companies retained the right to refuse workers sent to them by the union. However, claimant also testified that he could not recall any instance when a company refused to hire someone sent by the union. He further stated that he left Panama City, Florida, with the understanding that he had the job with McAbee Construction in Alabama. The union's assistant business manager, testified that the actual hiring of individual workers by the company is done at the job site.
The judge of compensation claims found that, for all practical purposes, claimant was hired at the union hall in Panama City, Florida. The judge further found that claimant's act of filling out an application and tax papers at the job site in Alabama was a mere formality, and was not intended to serve as a screening process for prospective employees, i.e., the paperwork served administrative needs. Nevertheless, because the administrative paperwork had to be completed at the job site in Alabama before claimant commenced work, the judge found the contract of hire was finalized in Alabama and that Florida had no jurisdiction over the claim.
The applicable statute, section 440.09(1), Florida Statutes (1989), provides in part:
... Where an accident happens while the employee is employed elsewhere than in this state, which would entitle him or his dependents to compensation if it had happened in this state, the employee or his dependents shall be entitled to compensation if the contract of employment was made in this state, or the employment was principally localized in this state... . (e.s.)
Where an employment contract was made is determined through a consideration of (1) the hiring authority of the person involved in employment negotiations with the claimant, and (2) the place of performance of the conditions of the proposed employment. For example, in Miller Contracting Co. of Ohio v. Hutto, 156 So.2d 745 (Fla. 1963), the company foreman lived in Jacksonville Beach and maintained an office in his home from which he conducted *1017 company business in that territory. The claimant lived in St. Augustine. The foreman called the claimant from Jacksonville Beach and offered him jobs in Florida and in other states. Although wages were discussed, since claimant was then engaged on another job, no agreement was reached concerning the date the claimant would report to work. Subsequently, the foreman went to Atlanta on a company job. While in Atlanta, he telephoned the claimant, advising him to report to work in Atlanta. The claimant did so, and when the Atlanta work was completed, he worked at other job sites for the employer. Between jobs, the claimant returned to his home in Florida. Subsequently, the claimant was directed by the foreman to report to Savannah, where he was working when injured.
The opinion makes clear that the foreman who contacted claimant about employment had the requisite authority to extend a bona fide offer of employment on behalf of the employer. The opinion also is clear that all negotiations were conducted in Florida, including an agreement regarding wages. The only unresolved point was the time the claimant would be available for work. On these facts, the court concluded the employment contract was made in Florida, and the later call from the foreman in Atlanta to the claimant in St. Augustine had no bearing on the employment agreement, which had been concluded earlier. Rather, the purpose of the call was to advise the claimant where to report to work.[1]See also J.L. Manta, Inc. v. Ramos, 526 So.2d 919 (Fla. 1st DCA 1988); George A. Fuller Co. v. Chastain, 388 So.2d 284 (Fla. 1st DCA 1980).
The instant case requires an examination of an employment contract when hiring is accomplished through a union hiring hall, pursuant to a collective bargaining agreement. In such circumstances, the general expectation is that anyone sent by the union in response to an employer request for workers is as good as hired. See 1A Arthur Larson, The Law of Workmen's Compensation § 26.22 (1990). Other jurisdictions have recognized that in certain situations, an employer may expressly or implicitly delegate hiring responsibility and authority to a union official to fill a work classification covered by a collective bargaining agreement, and oral acceptance of that classification by the person selected by the union official will result in a contract of employment. To reach this result, there must be "a finding that the employer, at the time he made his requirement known to the union official, committed himself to employ the person selected by the union official, and that the person so selected likewise committed himself to such employment." Posey v. Industrial Commission, 87 Ariz. 245, 249, 350 P.2d 659, 663 (1960). In other words, when a union and an employer enter into an agreement that the employer will hire only union workers, "the union becomes the agent of the employer (for employment purposes) and is authorized to make a job offer for the latter... . the acceptance of the offer by a prospective employee completes the contract of hiring." Mattel v. Pittman Construction Company, 248 La. 540, 180 So.2d 696, 698 (1965).
In Mattel, the employer contended that because the employer had the right to reject any worker sent by the union, the offer made by the New Orleans local to the claimant constituted nothing more than a proposal to submit a job application. In the course of its analysis, the court noted that the claimant was not rejected; rather, he was put to work immediately upon his arrival in Gulfport. Moreover, there was no evidence that the claimant went to Gulfport merely to apply for work, no proof that he made an application for employment, *1018 and no suggestion that the employer had ever rejected a union employee sent to a construction site at its request. In view of the evidence adduced, the court concluded "it was contemplated that when the men `ordered' by Pittman were offered jobs on the Gulfport project by the union representative in New Orleans, and they agreed to go to the site, such workers were then hired and would be put to work under that contract of hiring." 180 So.2d at 698-699. Finding that the job offer and acceptance took place in Louisiana, the court ruled that Louisiana courts had jurisdiction to apply the Louisiana compensation statute. Accord Reynolds Electrical & Engineering Company v. Workmen's Compensation Appeals Board, 65 Cal.2d 438, 55 Cal. Rptr. 254, 421 P.2d 102 (1966).[2]
At first blush, this case would appear to fit within the Mattel pattern, and indeed, the judge's order indicates his view that such was the case. However, the judge felt constrained by this court's decision in Star Insulation v. Kennington, 544 So.2d 301 (Fla. 1st DCA 1989), to find that an employee's performance of any act upon arrival at an out-of-state job site constitutes evidence that the contract of employment was not made in this state. Although we affirm the result reached in the order, we conclude that the rationale underlying the determination that Florida does not have jurisdiction over this claim was based on a misunderstanding of Star Insulation v. Kennington. The decision in that case was predicated on the determination that the company employee contacted by the Florida claimant regarding a job in Alabama, was without hiring authority. Our review of the record in this case leads us to a similar conclusion with respect to the union official who contacted claimant about the job with McAbee Construction in Cottonton, Alabama. Under the Articles of Agreement, if the union is unable to fill a requisition for applicants within forty-eight hours, the employer is free to employ applicants from any other available source. The agreement also provides that an employer retains the right to reject any job applicant referred by the union. When these express provisions are considered in conjunction with the union official's testimony that actual hiring takes place at the job site, it appears that hiring authority has not been delegated to the union by the employer.
Accordingly, the order finding that Florida has no jurisdiction over this claim is affirmed.
WOLF and KAHN, JJ., concur.
NOTES
[1] In so holding, the court distinguished its earlier decision in Ray-Hof Agencies, Inc. v. Petersen, 123 So.2d 251 (Fla. 1960), on its facts. In that case, a workman was told that if he would go to Atlanta, he would be given an opportunity to work and probably would be placed in the position of foreman which would be open. The claimant went to Atlanta, where he became foreman. His subsequent injury in Alabama gave rise to the question whether the employment contract was made in Florida. The court held that it was not, because no definite employment arrangements had been made prior to performance of the last act necessary for completion of the contract, i.e., the claimant's appearance in Atlanta.
[2] A different result obtained in Posey v. Industrial Commission. The Master Agreement at issue in Posey contained a provision which required the contractor to notify the union immediately when employees furnished by the union were hired. The court construed this contract provision as a recognition that the act of hiring by the contractor was a distinct act which took place at a time subsequent to the union's referral of one of its members. 87 Ariz. at 246-247, 350 P.2d at 660-661.